In re STERLING PACKAGING CORPORATION, Debtor.

Sterling Packaging Corporation, Movant,

v.

Systec Corporation, d/b/a Systec Conveyors, Respondent.

Bankruptcy No. 99–22419–BM.
Motion No. 00–3863M.

United States Bankruptcy Court, W.D. Pennsylvania.

Aug. 22, 2001.

William J. Moorhead, Jr., David I. Swan, McGuire Woods, LLP, Pittsburgh, PA, for debtor.

Anthony J. Basinski, Reed Smith, LLP, Pittsburgh, PA, David W. Lampl, Leech Tishman Fuscaldo & Lampl, Pittsburgh, PA, for Systec Corporation.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Debtor Sterling Packaging Corporation has objected to the secured claim of Systec Corporation ("Systec") and contends that Systec's claim should be disallowed in its entirety. Alternatively, to the extent the claim is allowed, debtor asserts that it is completely offset by a counterclaim debtor has asserted against Systec. Debtor also contends that any allowed claim Systec has is unsecured rather than secured because the mechanic's lien securing the claim of Systec was divested or extinguished by debtor's confirmed chapter 11 plan of reorganization.

For reasons set forth in this memorandum opinion, we conclude that debtor's objection to the claim of Systec must be overruled and that the claim should be allowed in its entirety, debtor's counterclaim notwithstanding. We further conclude that Systec's lien was not divested or extinguished by debtor's confirmed chapter 11 plan of reorganization and therefore passed through this bankruptcy case unaffected.

### — FACTS —

Debtor is in the business of producing cardboard cartons.

Systec is in the business of designing and installing conveyor systems for industrial uses.

Prior to 1998, debtor operated at two locations, one in Jeannette, Pennsylvania, and the other in Jonestown, Pennsylvania. After losing its biggest customer, debtor closed its Jonestown plant early in 1998 and consolidated its operations at the Jeannette location.

Due to the consolidation, debtor needed to expand and upgrade the conveyor system at its Jeannette plant to handle increased traffic. Debtor approached Systec in February or March of 1998 about expanding and upgrading the conveyor system at its Jeanette plant.

On April 30, 1998, after extensive discussions with debtor, Systec issued an "Acknowledgment", wherein it quoted a fixed price of $150,000.00 for upgrading and expanding the conveyor system then in place in Jeanette. Delivery of the required equipment within five to seven weeks after receipt of the order was listed as one of the terms of its proposal. The remainder of the proposed terms pertained to when debtor would pay for the equipment required to install the conveyor system and for its installation. The estimated shipment date of the equipment was during the week of June 27, 1998. The written proposal submitted by Systec contained no indication concerning when the upgraded conveyor system would be installed and fully operational.

On June 5, 1998, some five weeks later, debtor issued a purchase accepting Systec's proposal.

On June 26, 1998, just three weeks after debtor had issued its purchase order, Systec delivered the new equipment for the upgraded conveyor system to the Jeannette location and began installing it that same day. Installation was hindered, however, by conditions at the plant that were not of Systec's making. The roof and electrical system, for instance, were undergoing renovation at that time. Also, machin-

ery and equipment belonging to debtor that was to be incorporated into the new conveyor system was buried beneath debris left by these renovations. Systec spent considerable time sifting through the debris and identifying items for utilization in the upgraded conveyor system.

Installation of the new conveyor system did not proceed as rapidly as debtor and Systec had hoped. On August 14, 1998, debtor's vice-president for operations wrote to Systec identifying various unresolved problems with the newly-installed conveyor system and complaining that it was not yet operational. He complained, among other things, about the steepness of certain inclines and declines of the conveyors.

On September 18, 1998, after debtor and Systec agreed that certain modifications of the conveyor system were required to make it fully operational, debtor issued a change order for additional equipment to complete the modifications. It was agreed that debtor would pay for the cost of the additional equipment—$15,950.00—while Systec would install it at no additional cost to debtor.

On November 5, 1998, debtor's vice-president for operations signed a field activity report prepared by Systec which asserted that the conveyor system was working as designed and that no further work by Systec was required to complete it. That same day, he also signed another field activity report Systec prepared which asserted that all necessary adjustments to the conveyor system had been made and that all three shifts at the plant had used the new conveyor system without interruption.

On November 6, 1998, debtor ordered additional unspecified equipment from Systec for use in operating the conveyor

system. The cost of the equipment totaled $337.70.

On January 6, 1999, after debtor had rejected Systec's repeated requests for payment, Systec filed a notice of mechanic's lien in the Court of Common of Common Pleas of Westmoreland County, Pennsylvania, the county in which debtor's Jeannette plant was located. The total amount of the lien was $166,787.70, which included the initial quoted price of the system ($150,000.00), the cost of the equipment debtor ordered on September 18, 1998 ($15,950.00), and the cost of the equipment debtor ordered on November 6, 1998 ($337.70).

Systec brought suit against debtor in federal district court on February 1, 1999, seeking to recover the sum of $166,787.70, which Systec claimed debtor owed it for equipment and installation of the above conveyor system. Debtor responded that the work done by Systec was defective and incomplete and asserted a counterclaim in the amount of $447,728.00 for damages allegedly suffered.

Debtor filed a voluntary chapter 11 petition on April 1, 1999, thereby automatically staying Systec's pending lawsuit against debtor in federal district court.

On June 16, 1999, Systec filed a secured claim in debtor's bankruptcy case in the amount of $166,787.70 for goods and services rendered. Its claim arises out of debtor's refusal to pay Systec for the above conveyor system Systec had installed in debtor's Jeannette plant.

Debtor's second amended plan of reorganization was confirmed on April 28, 2000. Neither the plan nor the order confirming it expressly dealt with Systec's claim or with its statutory lien. The same is true of a consent order modifying the plan which issued on June 26, 2000.

Debtor eventually objected to Systec's secured claim on August 4, 2000. According to debtor, it was a provision of its agreement with Systec that the conveyor system would be fully operational by the beginning of July of 1998. Debtor asserted that Systec's claim should be denied because the conveyor system was neither installed nor fully operational by the beginning of July of 1998 or at any time thereafter. According to debtor, it had to hire someone else to make it fully operational. Any claim Systec may have, debtor further argues, is completely offset by its counterclaim for damages it suffered as the result of Systec's failure to install a fully operational conveyor system by the beginning of July of 1998 or at any time thereafter. Finally, debtor argues that any allowed claim Systec may have is allowable only as an *un*secured nonpriority claim because Systec's mechanic's lien was divested or extinguished by debtor's confirmed plan of reorganization.

An evidentiary hearing on debtor's objection to the secured claim of Systec and on debtor's counterclaim occurred wherein both sides were given an opportunity to present any evidence that they deemed appropriate.

— DISCUSSION —

The burden of going forward with evidence when there is an objection to a proof of claim filed in a bankruptcy case lies with different parties at different stages. The initial burden of going forward lies with the claimant, who must allege sufficient facts to support the claim. If claimant does so, the claim is *prima facie* valid. *In re Allegheny International, Inc.*, 954 F.2d 167, 173 (3d Cir.1992). The burden then shifts to the objector to produce evidence negating the *prima facie* validity of the claim. The objector must produce evidence which, if believed, would defeat at least one of the essential elements of the claim. *Id.* If the objector does so, the burden then shifts to the claimant to prove the validity of the claim

by a preponderance of the evidence. Although the burden of production is a shifting one, the burden of persuasion is not; it remains with the claimant at all times. 954 F.2d at 173–74.

It is undisputed that Systec met its initial burden and established the *prima facie* validity of its claim. If taken at face value, the documents attached to Systec's proof of claim would appear to indicate that it has a secured claim in the amount of $166,787.70 for goods and services provided in installing the conveyor at debtor's Jeannette plant.

It also is undisputed that debtor has met its burden of production and has come forward with evidence which, if believed, would defeat at least one of the essential elements of Systec's claim.

■ Debtor offered testimony that its peak production season begins every year early in July, when it has to start filling customer orders for cardboard boxes for use during the Christmas holiday season. In addition, debtor's vice-president for operations testified that debtor and Systec had agreed as a part of their contract that Systec would install a fully operational conveyor system by the beginning of July of 1998. There was testimony that the system still was not operational by early in November of 1998, when Systec refused to make further effort to make the system operational. After its busy season was over, it was testified, debtor contracted with someone else to make it fully operational.

Systec concedes that the conveyor system was not fully operational by the beginning of July of 1998. It denies, however, that it ever agreed to have it fully operational by then and insists that it was fully operational by no later than early November of 1998.

After reviewing all of the evidence, we conclude that installation of a fully operational conveyor system by the beginning of July of 1998 was *not* a term of the contract between debtor and Systec. We further conclude that Systec installed a fully operational system by no later than November 5, 1998.

The sole evidence for the proposition that the contract between debtor and Systec included a provision that the system would be fully operational by the beginning of July of 1998 comes from the testimony of debtor's vice-president of operations. The totality of the evidence convinces us that the contract contained no such provision.

Debtor offered no *documentary* evidence to corroborate its testimony on this point. Moreover, neither the "Acknowledgment" by Systec dated April 30, 1998, nor the purchase order debtor issued on June 5, 1998, contains any indication that the conveyor system had to be installed and fully operational by the beginning of July of 1998. Were such a critical provision a term of their contract, we would expect some reference thereto in at least one of these documents. We infer from its absence that no such provision was a part of the contract.

Moreover, the testimony offered by debtor that Systec never installed a fully operational conveyor system and that debtor therefore was required to contract with someone else to make it fully operational is refuted by field activity reports dated November 5, 1998, which debtor's vice-president for operations signed. The reports stated that: the system was working as designed; no further work by Systec was required to complete installation; all necessary adjustments to the system had been made; and all three shifts at the plant had used the system without interruption.

We have had an opportunity to observe the demeanor of debtor's witnesses, including its vice-president for operations. Because we are convinced that these field

activity reports would not have been signed unless they were true and correct, we reject the testimony that Systec never made the system fully operational. Their failure to recollect the field activity reports during cross-examination and to provide an explanation for why they were signed if inaccurate rings hollow and lacks credibility.

It is not necessary to address in detail debtor's counterclaim for damages arising out of Systec's alleged failure to install a fully operational system by the beginning of July of 1998. The counterclaim is predicated on the propositions, which we have determined to be false, that Systec had agreed to install a fully operational conveyor system by the beginning of July of 1998 and that Systec never installed a fully operational system.

We conclude in view of the foregoing that debtor's objection to Systec's claim must be overruled. Its claim in the amount of $166,787.70 is allowed in its entirety.

This conclusion does not end our consideration of debtor's objection to Systec's claim.

■ We previously noted that Systec's claim was secured by a mechanic's lien. It is not disputed that the lien, if valid, attached to the conveyor system Systec installed and, ultimately, to the realty to which it was affixed. It also is not disputed that debtor's confirmed plan of reorganization is silent concerning the fate of Systec's lien.

To the extent that Systec's claim is allowed, debtor argues that Systec is *unse*cured rather than secured because its lien was divested or extinguished by debtor's confirmed plan of reorganization. According to debtor, Systec's lien was extinguished by virtue of § 1141(c) of the Bankruptcy Code even though the plan was silent concerning the post-confirmation fate of the lien.

Section 1141(c) of the Bankruptcy Code provides in part as follows:

... [E]xcept as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors....

11 U.S.C. § 1141(c).

Article XII of debtor's confirmed chapter 11 plan in essence parrots this provision. It contains the following boilerplate:

Except as otherwise provided in the Plan or in the order confirming the Plan, after confirmation of the Plan, the property dealt with in the Plan will be free and clear of all claims and interests of creditors of the Debtor....

As support for its position that Systec's lien was extinguished in accordance with § 1141(c) even though no mention was made in the confirmed plan of the lien or of its fate, debtor cites *Matter of Penrod,* 50 F.3d 459 (7th Cir.1995).

In *Penrod,* a secured creditor with a lien against debtors' hogs filed a claim in debtors' bankruptcy case. Debtors neither objected to the creditor's claim nor challenged the validity of its lien. The confirmed chapter 11 plan of reorganization designated the creditor as the only member of Class III and provided that it would be paid in full with interest in monthly installments over a seven-year period. Neither the plan nor the confirmation order said anything at all about the creditor's lien. *Penrod,* 50 F.3d at 461.

When the hogs became infected with a virus shortly after the plan's effective date, debtors sold the hogs for slaughter and did not remit the proceeds to the creditor, as required by the governing security agreement. After the creditor brought suit in state court to enforce its lien, debtors asked the bankruptcy court to hold the creditor in contempt for violating the order

confirming debtors' plan. Debtors maintained that the confirmed plan extinguished the creditor's lien. *Id.*

The issue decided in *Penrod* was whether, when a confirmed chapter 11 plan provides for payment of the present value of a secured creditor's claim but is silent concerning the fate of the creditor's lien, the lien survives bankruptcy in accordance with the "old saw" that liens pass through bankruptcy unaffected. 50 F.3d at 461. What, in other words, is the "default rule" when the plan is silent about the fate of the lien? 50 F.3d at 462.

According to *Penrod*, § 1141(c) sets forth the "default rule" *for secured creditors who file claims for which provision is made in the plan of reorganization:* unless the chapter 11 plan or the order confirming it says that the lien is preserved, the lien is *extinguished.* 50 F.3d at 462–63.

The present case is distinguishable from *Penrod* in at least one significant way. In *Penrod,* the confirmed chapter 11 plan made specific provision for payment of the secured creditor's claim. The plan designated the creditor as the sole member of a class of secured creditors and provided that the creditor would be paid in full with interest on a monthly basis over a prescribed period of time. Not only is the plan in the present case silent concerning the fate of Systec's lien, it also is silent concerning the treatment of its claim.

Assuming that § 1141(c) articulates the relevant "default rule" for determining the fate of certain liens in a chapter 11 case, it does *not* compel the conclusion in this case that Systec's lien was divested or extinguished. Section 1141(c) expressly provides that, unless other provision is made in the chapter 11 plan or in the order confirming it, "the property dealt with by the plan" is free and clear of all claims and interests of creditors after the plan is confirmed.

Debtor has not indicated how its confirmed plan deals with the property that is subject to Systec's lien. Our own examination of debtor's plan leads us to conclude that it does *not* deal with the property that is subject to Systec's lien. It is, in other words, silent in this regard, just as it is silent concerning the fate of Systec's lien.

In light of the foregoing, we conclude that Systec's lien was *not* divested or extinguished by debtor's confirmed plan by virtue of the operation of § 1141(c). Said lien remains in existence and remains attached to the property to which it originally attached.